REDMANN, Judge.
A separated husband appeals from a judgment holding him liable for automobile repairs which his separated wife ordered. Because we find that the husband instructed the repairman not to repair the car, we reverse.
*373 The wife had sued the husband for separation on October 25, 1972, and obtained a. judgment on March 5, 1974. Meanwhile, she had possession of one of the former community’s two automobiles. It suffered $853 damage in late December 1973 and she requested that plaintiff repair it. The $100-deductible collision insurer paid the husband $753 in early January 1974. The husband refused to pay the repairman, who completed repairs at the end of January (or, as his petition alleged, March 1), and who detained the automobile and finally sued wife and husband for $853 repairs and over 425 days of “storage” of the car at $2 daily. (We do not decide the “storage” issue, but we note this court’s decision in Lindsay v. Mills, La.App.1976, 325 So.2d 840). The husband reconvened for possession of the car and for loss of its use during the repairman’s detention of it. The trial court awarded both repairs and storage to the repairman, against the husband alone.
The trial judge expressed the view, at the outset and during the course of the trial, that if the husband had received the collision insurance proceeds, he was liable to the repairman irrespective of whether or not he had authorized the repairs. That conclusion does not necessarily follow that premise. An automobile owner is paid by the collision insurer for the owner’s loss (less deductible). That payment by the insurer does not oblige the owner to have his car repaired, and therefore that payment cannot be the foundation of any obligation to pay for having the car repaired. If an owner paid by an insurer has any obligation to pay for repair of his car, it can only arise because the owner has agreed, expressly or impliedly, in person or by agent, to pay for the repair.
In deciding whether any such agreement to pay occurred here, we do not have the benefit of a credibility evaluation by the trial judge. His view of the law made it immaterial who was telling the truth. Rather than remand for the trial judge to make that evaluation (see Gonzales v. Xerox Corp., La.1975, 320 So.2d 163), we ourselves decide that the husband’s testimony of having timely instructed the repairman not to repair is to be believed rather than the repairman’s testimony that he never heard from the husband until the repairs were nearly completed. The husband’s testimony is indirectly more consistent, and that of the repairman more inconsistent, with the insurance agent’s testimony that, after the appraisal of Thursday, December 27, 1973, a draft dated New Year’s Eve (Monday) was sent to the husband, who returned it by Friday January 4 with instructions that the payee should be himself alone rather than himself and plaintiff. Moreover, the repairman’s testimony of having been told by the insurance agency that “our draft was waiting . . . upon completion they would turn this draft over to us” is contradicted by the agency’s representative: “We had no contact whatsoever with the St. Bernard Body and Fender Company.”
We therefore find as a fact that, prior to any repair by plaintiff, the husband instructed plaintiff not to repair the car. This finding requires reversal of the judgment against the husband.
(Whether the repairman’s claim is valid against the wife, and whether he might have a repairman’s privilege against her presumable half interest in the car, is not before us. The wife was not cast in judgment and the repairman did not appeal.)
The husband’s reconventional demand for return of the vehicle and for loss of its use remains rejected. His remedy for realization of his rights to the automobile lies in the partition of the community. He can no more demand possession of the co-owned car his separated wife has possession of (or has delivered to the repairman) than she could demand possession of the co-owned car he has possession of.
Reversed as to main demand; affirmed as to reconventional demand.